DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
By:   CECILIA VOGEL
       Assistant United States Attorney
       One St. Andrew's Plaza
       New York, New York 10007
       (212) 637-1084

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- X

UNITED STATES OF AMERICA,

           Plaintiff,

   -v.-

$399,109.93 IN UNITED STATES CURRENCY
FORMERLY HELD IN ESCROW BY
ESCROW SHOWCASE, INC., ESCROW FILE
NUMBER 4507-HA, FROM THE SALE OF
2635 ANNA STREET, RIVERSIDE, CA 92506,

          Defendant-*in-rem*.

------------------------------------- X

**VERIFIED CIVIL COMPLAINT FOR FORFEITURE**

23 Civ. _____

      Plaintiff United States of America, by its attorney, Damian Williams, United States Attorney for the Southern District of New York, for its verified civil complaint, alleges, upon information and belief, as follows:

1

## JURISDICTION AND VENUE

1. This action is brought pursuant to Title 18, United States Code, Sections 981(a)(1)(A) and 981(a)(1)(C) by the United States of America seeking the forfeiture of the following money and property:

   a. $399,109.93 formerly held in escrow by Escrow Showcase, Inc., Escrow file number 4507-HA, from the sale of 2635 Anna St, Riverside, California 92506 (the "Defendant-*in-rem*").

2. This Court has original jurisdiction over this forfeiture action pursuant to Title 28, United States Code, Sections 1345 and 1355.

3. Venue is proper pursuant to Title 28, United States Code, Section 1395 because the Defendant-*in-rem* is currently located within the judicial district for the Southern District of New York. Venue is also proper pursuant to Title 28, United States Code, Section 1355(b)(1)(A) because the acts and omissions giving rise to the forfeiture took place in the Southern District of New York.

## PROBABLE CAUSE FOR FORFEITURE

4. As set forth below, there is probable cause to believe that the Defendant-*in-rem* is subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(A), as property involved in or traceable to a transaction or attempted transaction in violation of Title 18, United States Code, Section 1957; and pursuant to Title 18, United States Code, Section 981(a)(1)(C), as property which constitutes or is derived from proceeds traceable to violations of Title 18, United States Code, Section 1343.

5. Raymond Pettibon is a prominent contemporary artist living and working

2

principally in New York, New York. Pettibon has produced a series of paintings depicting ocean waves with surfers accompanied by handwritten text (the "Wave Series").

6. Upon information and belief, paintings in Pettibon's Wave Series are his most highly prized works. The paintings in the Wave Series usually feature handwritten text adapted from literature. Pettibon produces between one and four paintings in the Wave Series a year. On the primary market, a painting from the Wave Series currently can sell for approximately $1.2 million.

7. Christian Rosa Weinberger ("Weinberger") is a contemporary visual artist based in Vienna, Austria, and for a time, in Los Angeles, California.

8. In October 2021, a grand jury in this District returned a felony indictment charging Weinberger with wire fraud conspiracy and substantive wire fraud (18 U.S.C. §§ 1349, 1343) and aggravated identity theft (18 U.S.C. § 1028A) in connection with a scheme to defraud potential art buyers by selling forged Pettibon paintings. As part of the scheme, in or about 2018 and 2020, Weinberger sold and gave away various paintings that he falsely represented to be authentic Pettibon Wave Series paintings, and he provided false certificates of authenticity that included fake Pettibon signatures. *See United States v. Weinberger*, 21 Cr. 624 (the "Indictment") (attached as Exhibit A hereto and incorporated herein by reference). Weinberger is currently a fugitive abroad.

9. As explained further below, Weinberger used the proceeds of the sale of the following two forged Pettibon Wave Series paintings to purchase and make mortgage payments on a residence at 2635 Anna Street, Riverside, California (the "Anna Street Residence"), and when Weinberger later sold the Anna Street Residence, the proceeds of the sale

3

became the Defendant-*in-rem*:

      1.     *Untitled ("Bail, or bail out . . .")*, 2012, 115 cm by 163 cm

("Forged Artwork-1"):



      2.     *Untitled ("If there is a line . . .")*, 2016, 118.1 cm by 208.3 cm

("Forged Artwork-2", collectively with Forged Artwork-1, the "Forged Artworks"):



4

10. The Forged Artworks are specifically referenced in the Indictment. Indictment ¶¶ 3(c), 3(d), 5.

### Weinberger Sold the Forged Artworks

11. Weinberger sold the Forged Artworks to an individual in the United States ("Buyer-1").

12. Weinberger provided Buyer-1 with purported certificates of authenticity for the Forged Artworks. The purported certificates of authenticity each contained an image of the particular painting and were purportedly signed by Pettibon. These certificates of authenticity were fake, and Pettibon's signatures were forged.

13. On January 28, 2020, Buyer-1 purchased Forged Artwork-1 from Weinberger for $250,000. Buyer-1 sent the payment to a French bank account in Weinberger's name (the "Weinberger French bank account").

14. On July 9, 2020, Buyer-1 purchased Forged Artwork-2 from Weinberger for $400,000. Buyer-1 sent the payment to a U.S. bank account provided by Weinberger (the "Weinberger U.S. bank account"). In connection with this payment, wire transfers from Buyer-1 to Weinberger traveled through the Southern District of New York.

### The Forged Artworks Are Not Authentic Pettibon Artworks

15. An art gallery in Manhattan has represented Pettibon as his primary gallery since approximately 2014 (the "N.Y. Gallery"). The N.Y. Gallery sells Pettibon's artworks on the "primary market," meaning that the artworks are being sold for the first time, rather than for resale. The N.Y. Gallery, with the assistance of its employee ("Gallerist-1"), enters each completed Pettibon artwork, including photographs and details of each completed

5

artwork, into a database maintained by the N.Y. Gallery.

16. Gallerist-1 reviewed photographs of the Forged Artworks and the accompanying purported certificates of authenticity. According to Gallerist-1, there are a number of problems with the Forged Artworks that raise questions about their authenticity. First, the Forged Artworks do not match any paintings in the N.Y. Gallery's database of Pettibon artworks. Second, neither the N.Y. Gallery nor Pettibon issue certificates of authenticity, and Pettibon's signature on the certificates do not appear "authentic." Third, regarding Forged Atwork-1, the substance of the text and the font of the text appear "off." Regarding Forged Artwork-2, the handwritten text on Subject Artwork-2 appears "off." The text is similar to the text in a 2011 painting from the Wave Series, but Pettibon does not repeat himself. Fourth, Pettibon advised Gallerist-1 that the signature on the back of Forged Artwork-2 is not his signature, and that he did not sign the certificate of authenticity.

17. An art gallery in Los Angeles, California (the "L.A. Gallery") sells Pettibon's artworks on the primary market. The L.A. Gallery represented Pettibon as his primary gallery prior to approximately 2014, when Pettibon moved to New York and his primary gallery changed to the N.Y. Gallery. Like the N.Y. Gallery, the L.A. Gallery photographs and details each completed Pettibon artwork created prior to 2014 or sold through the L.A. Gallery subsequent to 2014, and maintains those photographs and details in a database with the assistance of an L.A. Gallery employee ("Gallerist-2").

18. Gallerist-2 reviewed photographs of the Forged Atworks and the accompanying purported certificates of authenticity. According to Gallerist-2, there are problems with the Forged Atworks that raise questions about their authenticity. First, the Forged Artworks

6

are not included in the L.A. Gallery's database of Pettibon's artworks. Second, Gallerist-2 has never heard of Pettibon signing a certificate of authenticity. Third, there are problems with the content of the Forged Artworks. Specifically, regarding Forged Artwork-1: the font of the handwritten text is not Pettibon's, notably the width of the letters is "off"; the substance of the handwritten text does not seem consistent with Pettibon; and the sky "appears added." Regarding Forged Artwork-2, the shape of the wave may be Pettibon's work, but the tube of the wave does not look like Pettibon's work. According to Gallerist-2 , the Forged Artworks look like they possibly have some original elements created by Pettibon, but that other person(s) added to the paintings.

19. In December 2019, around the same time that Weinberger was discussing the sale of the Forged Artworks with Buyer-1, Weinberger exchanged emails with a friend ("Co-conspirator-1") about trying to find a buyer for certain unnamed paintings. In one of the emails, Weinberger told Co-conspirator-1 that "they're asking about the certificates, how we're getting them."[1] Co-conspirator-1 asked Weinberger, in substance and in part, why the sales were taking so long. Weinberger responded explaining that he wanted to find a buyer who would agree not to resell the works at auction, and wrote in English that "I am not trying to get busted so that's why it's takeing[sic] longer." Indictment ¶ 7.

20. On January 29, 2021, an online news source published an article reporting accusations that Weinberger had forged Forged Artwork-2. On January 30, 2021, the day after the

---

[1] Email communications between Weinberger and Co-conspirator-1 were generally in German. Email communications referenced here have been translated into English, and draft translations are summarized or quoted herein.

7

article was published, Weinberger emailed Co-conspirator-1 that "[t]he secret is out. [News source] dropped an article yesterday. Now everything is pretty shitty." Indictment ¶ 9.

21. On January 31, 2021, Weinberger drafted an email to Pettibon, in which he stated that Forged Artwork-2, "is a overpainted print made from [Co-Conspirator-1] a friend from Austria[.]"

22. On February 25, 2021, Weinberger left the United States. Weinberger has not returned to the United States.

### Weinberger Used the Proceeds from the Sale of the Forged Artworks to Pay for the Anna Street Residence

23. Weinberger used the proceeds from the fraudulent the sale of the Forged Artworks to Buyer-1 to pay for the Anna Street Residence.

24. Specifically, Weinberger used the proceeds of the fraudulent sale of Forged Artwork-1 to pay the down payment for the Anna Street Residence:

    a. On January 5, 2020, Weinberger informed Buyer-1 via text message that Weinberger wanted to sell Forged Artwork-1 so that Weinberger could purchase a house for $1.25 million, and that Weinberger needed money to make the down payment.

    b. On January 27, 2020, Buyer-1 wired the $250,000 payment for Forged Artwork-1 to the Weinberger French bank account.

    c. On February 3, 2020, the Weinberger French bank account received a $250,000 transfer.

    d. On February 4, 2020, the Weinberger French bank account transferred approximately $30,000 to Armstrong Escrow Corporation in Riverside, California, the escrow company that handled the sale of the Anna Street Residence in February 2020.

    e. On February 10, 2020, the Weinberger U.S. Bank Account received $235,854.20 from the Weinberger French Bank Account. Prior to receiving this transfer, the Weinberger U.S. Bank Account had a negative balance.

    f. On February 24, 2020, the Weinberger U.S. Bank Account wired $200,000 to Armstrong Escrow Corporation.

    g. On February 25, 2020, Weinberger purchased and closed on the Anna Street Residence for approximately $1.135 million. That day, Weinberger executed a mortgage note in the amount of $908,000 for the Anna Street Residence. The $200,000 and $30,000 that Weinberger had previously transferred to Armstrong Escrow Corporation represented the down payment on the Anna Street Residence.

    h. On April 4, 2020, Weinberger texted Buyer-1, in part, ""thx for getting us the house. Who would have tought[sic] u really saved my ass again."

    25. Weinberger used the proceeds of the fraudulent sale of Forged Artwork-2 to pay the mortgage payments for the Anna Street Residence:

    a. Between approximately July 15 and 27, 2020, Buyer-1 sent Weinberger four payments to the Weinberger U.S. bank account totaling $400,000 as payment for Forged Artwork-2. Prior to receiving the payment from Buyer-1, the Weinberger U.S. bank account had a negative balance. The Weinberger U.S. bank account did not receive other deposits in July 2020.

9

    b. Between July and October 2020, Weinberger made a total of approximately $32,628.40 in mortgage payments from the Weinberger U.S. bank account. Specifically, Weinberger made the following payments on the following dates: $20,000 on July 24, 2020; $1,752.32 on July 27, 2020; $5,438.08 on August 12, 2020; $2,719 on September 3, 2020; and $2,719 on October 7, 2020. Throughout this period, the Weinberger U.S. bank account was primarily funded by the payments from Buyer-1 for Forged Artwork-2, as described in paragraph 25(a). As described above, the Weinberger U.S. bank account received no other deposits in July 2020, and in August through October 7, 2020, the Weinberger U.S. bank account received an additional approximately $44,095 in deposits from other sources.

  26. On May 18, 2021, after Weinberger had left the United States, Weinberger sold the Anna Street Residence for approximately $1.4 million. Immediately after the sale, Escrow Showcase, Inc., held in escrow on behalf of the seller, *i.e.*, Weinberger, $399,109.93 in net proceeds from the sale of the Anna Street Residence.[2] Weinberger had instructed the escrow agent to wire the proceeds to a bank account in Portugal. Before the escrow agent wired the proceeds to Portugal, the Federal Bureau of Investigation served a judicial seizure warrant on the escrow agent for the funds in escrow, and the escrow agent transferred the funds to the custody of the Federal Bureau of Investigation pursuant to the warrant.

---

[2] $399,109.93 were the net proceeds due to Weinberger as the seller of the Anna Street Residence. Of that amount, approximately $262,628.40 (the sum of the payments to Armstrong Escrow Corporation and the mortgage payments described above) is traceable to the proceeds of the sale of the Forged Artworks. The remaining $136,481.53 of the $399,109.93 is profit derived from proceeds traceable to the sale of the Forged Artworks.

## CLAIMS FOR FORFEITURE

### Claim One

**Forfeiture Under 18 U.S.C. § 981(a)(1)(A)**
**(Property Involved in or Traceable to Proceeds of a Violation of Title 18, United States Code, Section 1957)**

27. Paragraphs 1 through 26 of this Complaint are repeated and re-alleged as if fully set forth herein.

28. Title 18, United States Code, Section 981(a)(1)(A) subjects to civil forfeiture "[a]ny property, real or personal, involved in a transaction or attempted transaction in violation of section . . . 1957 . . . of this title, or property traceable to such property."

29. Title 18, United States Code, Section 1957 provides, in relevant part, "Whoever . . . knowingly engages or attempts to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity [as defined in 18 U.S.C. § 1956(c)(7)]" shall be subject to criminal penalties.

30. By reason of the foregoing, the Defendant-*in-rem* is subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(A) as property involved in a money laundering transaction or an attempted money laundering transaction, in violation of Title 18, United States Code, Section 1957, or as property traceable to such property.

### Claim Two

**Forfeiture Under 18 U.S.C. § 981(a)(1)(C)**
**(Property Constituting or Derived From Proceeds of Violations of Specified Unlawful Activity)**

31. Paragraphs 1 through 26 of this Complaint are repeated and re-alleged as if fully set forth herein.

32. Title 18, United States Code, Section 981(a)(1)(C) subjects to civil forfeiture, "any property, real or personal, which constitutes or is derived from proceeds traceable" to "any offense constituting 'specified unlawful activity' (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such an offense."

33. Under Title 18, United States Code, Section 1956(c)(7), "specified unlawful activity" is defined to include, *inter alia*, "any act or activity constituting an offense listed in" Title 18, United States Code, Section 1961(1). Section 1961(1), in turn, defines "racketeering activity" to include the offense of Title 18, United States Code, Section 1343 (wire fraud).

34. Title 18, United States Code, Section 1343, provides in pertinent part, "[w]hoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice" shall be subject to criminal penalties.

35. By reason of the foregoing, the Defendant *in Rem* is subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C), as property constituting or derived from proceeds traceable to violations of Title 18, United States Code, Section 1343.

Dated: New York, New York
      July 5, 2023

                          DAMIAN WILLIAMS
                          United States Attorney for the
                          Southern District of New York
                          Attorney for the Plaintiff
                          United States of America

By: _____
                          CECILIA VOGEL
                          Assistant United States Attorney
                          One St. Andrew's Plaza
                          New York, New York 10007
                          Telephone: (212) 637-1084

## VERIFICATION

STATE OF NEW YORK              )
COUNTY OF NEW YORK          :
SOUTHERN DISTRICT OF NEW YORK  )

JESSICA DITTMER, pursuant to Title 28, United States Code, Section 1746, hereby declares under penalty of perjury that she is a Special Agent with the Federal Bureau of Investigation; that she has read the foregoing Verified Complaint and knows the contents thereof; that the same is true to the best of her knowledge, information and belief; and that the sources of his information and the grounds of her belief are her personal involvement in the investigation, and conversations with and documents prepared by law enforcement officers and others.

_____
JESSICA DITTMER
Special Agent
Federal Bureau of Investigation

Executed on this
5 day of July 2023